UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ANTHONY RUISE,

       Petitioner,

v.                                      Case No. 3:17-cv-233-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## <u>ORDER</u>

### I. Status

Petitioner Anthony Ruise, an inmate of the Florida penal system, initiated this action with the assistance of counsel on February 27, 2017, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Ruise challenges a 2010 state court (Duval County, Florida) judgment of conviction for sexual battery. Ruise raises eight grounds for relief. <u>See</u> Petition at 5-27.[1] Respondents have submitted a memorandum in opposition to the Petition. <u>See</u> Response to Petition for Writ of Habeas Corpus (Response; Doc. 21) with exhibits (Resp. Ex.). Ruise filed a brief in reply. <u>See</u> Reply to the State's Response to the Petition for Writ of Habeas Corpus (Reply; Doc. 23). This case is ripe for review.

---

[1] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On October 13, 2008, the State of Florida (State) charged Ruise by way of Information with one count of sexual battery. Resp. Ex. B1 at 13. Ruise proceeded to a jury trial, at the conclusion of which the jury found Ruise guilty as charged, with a specific finding that Ruise coerced the victim to submit by threatening to use force or violence likely to cause serious personal injury and the victim reasonably believed that Ruise had the ability to execute the threat. Resp. Ex. B3 at 361. On May 7, 2010, the circuit court sentenced Ruise to a term of incarceration of thirty years in prison and adjudicated him a sexual predator. Id. at 395-96.

Ruise appealed his judgment and sentence to Florida's First District Court of Appeal (First DCA). Id. at 415. In his initial brief, Ruise contended that (1) the circuit court erred in allowing the State to question him as to the number of his prior convictions for driving under the influence (DUI) and (2) the State made improper arguments to the jury. Resp. Ex. B10. The State filed an answer brief. Resp. Ex. B11. On September 8, 2011, the First DCA per curiam affirmed the judgment and sentence without a written opinion, Resp. Ex. B12, and issued the Mandate on September 26, 2011. Resp. Ex. B13.

On August 17, 2012, Ruise filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. C2 at 276. On September 23, 2013, Ruise, with the assistance of counsel, filed an amended motion for postconviction relief pursuant to Rule 3.850 (Rule 3.850 Motion). Resp. Ex. C1 at 1-41. Ruise raised the following claims in his Rule 3.850 Motion, alleging counsel was ineffective for: (1) failing to impeach the victim with prior inconsistent statements; (2) failing to object to a Brady[2]

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

violation; (3) opening the door to the introduction of Ruise's misdemeanor DUI convictions; (4) failing to object to the introduction of collateral crime evidence; (5) failing to object to improper closing arguments; (6) failing to object to a jury instruction; and (7) failing to call a witness. Id. Ruise also raised an eighth ground for relief, which alleged the cumulative effect of counsel's deficient performance prejudiced him. Id. The circuit court denied the Rule 3.850 Motion on November 12, 2015. Resp. Ex. C2 at 276-300. On November 1, 2016, the First DCA per curiam affirmed the denial of the motion without a written opinion, Resp. Ex. C8, and issued the Mandate on November 17, 2016. Resp. Ex. C9.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record

before the Court. Because the Court can "adequately assess [Ruise's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

4

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the

> evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance

prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing

Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,

which we expect will often be so, that course should be followed." Strickland, 466 U.S. at

697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance,

556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's

performance mandated by Strickland, the AEDPA adds another layer of deference--this

one to a state court's decision--when we are considering whether to grant federal habeas

relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir.

2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v.

Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

## A. Ground One

Ruise alleges that his trial counsel was ineffective for failing to impeach the victim's trial testimony with her deposition testimony. Petition at 5-7. Specifically, he contends counsel should have impeached the victim's trial testimony that she had $50, $8 of which she used on food, with her deposition testimony that she did not have money for a taxi. Id. at 5-6. Also, Ruise asserts the victim's trial testimony that Ruise was following her on the side of the road but did not touch her by the time a woman in a car had stopped to check on her should have been impeached with her deposition testimony that Ruise had grabbed her shoulder and she pushed him away when the car stopped. Id. at 6. Ruise further notes that in her deposition, the victim stated she did not recall "any of the key events that occurred" that night, which counsel should have used to impeach her trial testimony that provided specific details about the sequence of events. Id. According to Ruise, this case came down to a credibility determination between Ruise and the victim and counsel's failure to impeach the victim and impugn her credibility prejudiced the outcome of the trial. Id. at 6-7.

Ruise raised a similar claim in his Rule 3.850 Motion. Resp. Ex. C1 at 11-17. The circuit court denied this claim, explaining:

> This Court is unpersuaded the outcome of Defendant's trial would have been different had counsel impeached the victim as Defendant now suggests. First, in counsels' Motion for New Trial, upon which the trial court held a full hearing, counsel argued the trial court erred in sustaining numerous objections by the State during the victim's testimony. One of the issues counsel raised involved trial court error for sustaining the State's objection to the victim's testimony about the woman in the car who asked the victim if she needed help. It is noteworthy these issues were reviewed on appeal

through Defendant's Statement of Judicial Acts to be Reviewed. As noted *supra*, the First DCA subsequently affirmed Defendant's conviction.

Second, throughout counsel's entire cross-examination of the victim, he exhaustively questioned her about her alcohol consumption during the night of the incident. Counsel specifically elicited from the victim that she consumed at least ten alcoholic beverages while she socialized at a nightclub before the incident. Such questioning served to show the jury they should not believe the victim's testimony because she was intoxicated and therefore her memory, and her ability to remember the events, was distorted and inaccurate.

Counsel further questioned the victim about her ability to remember the full names of her friends with whom she socialized, but she could not recall the full names of her roommates who allowed her to "crash" at their apartment rent-free for months. Counsel also elicited from the victim that she once knew a white man named Anthony, and Defendant is a "light-colored black man" named Anthony. In addition, counsel asked the victim if she previously told investigators someone followed her to Denny's, and she testified she did not tell investigators such information. Finally, the record indicates counsel *did* question the victim about the sequence of when the vehicle stopped and the woman asked her if she needed a ride, and the victim testified in accordance with her testimony during direct examination.

As such, the record reflects counsel *did* impeach the victim's credibility, albeit on several different, more favorable grounds for impeachment than those suggested by Defendant. This Court finds counsel's impeachment of the victim on these different grounds served the same purpose as impeachment of her on the basis suggested by Defendant. See Ellis, 622 So. 2d at 996 n.3.[4] Through his questioning, counsel attempted to show the jury that because the victim demonstrated she had a poor memory and drank a large quantity of alcohol during the night of the incident, the jury should not find credence in her testimony. Accordingly, in light of counsel's impeachment of the victim on other grounds, this Court cannot find the jury would have completely discredited the victim's version of events had counsel impeached her

---

[4] Ellis v. State, 622 So. 2d 991 (Fla. 1993).

> based on the grounds suggested by Defendant. This Court
> finds Defendant has failed to demonstrate prejudice in this
> respect as required by <u>Strickland</u>, and Ground One is denied.

Resp. Ex. C2 at 279-82 (record citations omitted). The First DCA affirmed the denial of

this claim without a written opinion. Resp. Exs. C8; C9.

To the extent that the First DCA decided the claim on the merits,[5] the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Ruise is not entitled to relief

on the basis of this claim.

Even if the state appellate court's adjudication of the claim is not entitled to

deference, this claim is without merit. A review of the victim's deposition reflects that when

the defense counsel asked if calling a cab was an option, the victim stated "I didn't have

the money for a cab. . . . It's like $7 just to go down the street. . . . I could have kept the

$7 and ate a burger." Resp. Ex. B2 at 250. However, several questions later in the

deposition, when counsel asked her if she paid for her meal at Denny's after leaving the

night club, the victim stated she paid for her own meal with a $50 bill and received two

$20 bills in return. <u>Id.</u> at 257-58. Notably, at trial, the victim testified she paid her bill at

Denny's with a $50 bill. Resp. Ex. B4 at 47. The victim further testified during her

---

[5] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

deposition that the remaining $40 was needed to repay her roommate and buy groceries. Resp. Ex. B2 at 258. Reading the victim's deposition testimony in context, it appears as if she stated she did not have money for a cab because she did not want to waste it on a cab when she could get food and that the remaining cash was earmarked to repay a debt and buy groceries. Accordingly, had Ruise's counsel attempted to impeach the victim with her deposition testimony as Ruise suggests, the State would have been able to rehabilitate the victim with her other statements during the deposition that are in conformance with her trial testimony. As such, there is no reasonable probability the outcome of the trial would have been different had counsel impeached the victim on this issue.

Concerning the interaction with the vehicle, in her deposition, the victim stated Ruise grabbed her shoulder prior to the good Samaritan stopping her car. Id. at 269, 273-74. But at trial, she testified Ruise grabbed her shoulder immediately after the car left. Resp. Ex. B4 at 51. The Court finds this small temporal discrepancy would not have seriously impacted the victim's credibility because the core of the victim's account of that night remained the same. A driver pulled over to the side of the road to ask if the victim was alright or needed help, the victim stated Ruise was bothering her and asked the driver to call the police, the driver apparently did not call the police, and Ruise sexually battered the victim. Id. at 48-60. These operative facts remained the same; therefore, the Court finds there is no reasonable probability the outcome of the trial would have been different had counsel impeached the victim in this manner.

As to Ruise's contention that the victim could not correctly recall the entire sequence of events that night, her deposition reflects that she gave detailed descriptions

of that night and the incident, from why she left her apartment, to the specific drinks she consumed at the club, to who was present at various places, and how Ruise sexually battered her. Resp. Ex. B2 at 191-358. Accordingly, the record refutes Ruise's allegations to the extent he claims the victim's deposition testimony would have highlighted her inability to remember events.

Finally, the record reflects that trial counsel thoroughly cross-examined the victim, albeit on different matters than those Ruise alleges here. Resp. Ex. B4 at 69-92. For instance, counsel questioned the victim about her mental health, the amount of alcohol she consumed, a prior crime involving dishonesty, her inability to remember the names of friends and roommates, and with prior inconsistent statements from her deposition. Id. at 77-78, 82-88. As such, counsel did impugn the credibility of the victim. However, the State was even more successful at impugning Ruise's credibility, which is also why this Court now concludes there is no reasonable probability the outcome of the trial would have been different had counsel actually impeached the victim in the manner Ruise puts forth here.

The record reflects that when a detective first interviewed Ruise, he denied knowing the girl, denied raping anyone, and stated he had sex with only one Caucasian woman around that time, a former girlfriend. Resp. Ex. B5 at 282-86. After being confronted with the fact that his semen was found in the victim, Ruise still denied the rape but changed his story, saying he had consensual sex with a lot of Caucasian women who he couldn't remember because he was drunk. Id. at 287-98. However, at trial, Ruise stated he did remember the victim, albeit only her first name, that she was a prostitute he picked up after driving home from work, and they had consensual sex in his apartment.

Id. at 338-43, 348-49. On cross-examination though, the State impeached Ruise with a pro se letter he filed with the circuit court, in which Ruise detailed another version of events. Id. at 364-65. In his letter, Ruise maintained that he was driving home from a long night of drinking with friends, not from work, and spotted the victim walking. Id. He pulled over, let her in his car, and she asked if he was looking for a date, to which Ruise responded he was not opposed to it. Id. They agreed upon a price for sex and went to his apartment and consummated the deal. Id. In sum, the jury heard all three of Ruise's varying explanations for what happened that night, all of which materially contradict each other. Based on this record, the State substantially impugned Ruise's credibility to the extent that the Court is confident even if counsel had confronted the victim with her deposition testimony, Ruise would still have been convicted. Accordingly, the Court finds Ruise has failed to demonstrate deficient performance or prejudice; therefore, the relief he seeks in Ground One is due to be denied.

### B. Ground Two

In Ground Two, Ruise avers that his trial counsel was ineffective for failing to object to a Brady violation. Petition at 8-11. Ruise contends that the State withheld the jeans and jacket the victim wore the night of the sexual battery. Id. Noting that the victim alleged she was raped on the ground in a grassy, dirt area, Ruise asserts that had the jeans and jacket been collected as evidence, they would have demonstrated that there was no evidence of grass or debris on the articles of clothing, thereby refuting the victim's story. Id. at 8. According to Ruise, the nurse at the Sexual Assault Response Center (SARC) was required to take the jeans and jacket into evidence but failed to do so and the responding officers failed to call out an evidence technician and advise the victim she

should turn over the clothing. Id. at 8-10. Ruise asserts that these failures represented violations of the Jacksonville Sheriff's Office's (JSO) standard operating procedure in sexual battery cases. Id. at 10-11.

In his Rule 3.850 Motion filed with the circuit court, Ruise raised a substantially similar claim. Resp. Ex. C1 at 17-20. The circuit court denied this claim, writing:

> Here, this Court finds Defendant has failed to satisfy the second Brady prong, specifically, the State suppressed the evidence at issue, either willfully or inadvertently. Specifically, Defendant has failed to demonstrate SARC is an extension of the State and, thus, a viable Brady violation can stand because of SARC employees' actions. Upon research and further examination, this Court has similarly been unable to find any such authority. As such, this Court finds SARC employees are not law enforcement and thus are not State actors, as contemplated by Brady.
>
> Assuming *arguendo* SARC was an extension of the State or law enforcement, Defendant's claim still fails. First, the victim testified during trial that she gave only her bathing suit and tank top to the nurse at SARC. Second, Ms. Choulat, the nurse who examined the victim at SARC and collected evidence for a sexual assault kit, testified during the evidentiary hearing. Ms. Choulat recalled the victim wore a bathing suit, a t-shirt, and a jacket, and she did not notice any plant matter on the victim's clothing. Additionally, Ms. Choulat stated, nothing stood out to her about the victim's jacket. Ms. Choulat noted that when the victim undressed on the standard brown paper SARC used to preserve evidence, Ms. Choulat did not notice any particles or matter fall from the victim's clothing such as leaves, plant matter, or the like. Ms. Choulat further testified that if any such particles or matter fell from the victim's clothing, the evidence would have been collected, rolled into a paper roll, and sent to the Florida Department of Law Enforcement ("FDLE") for examination/testing. If such evidence did fall onto the paper, Ms. Choulat would have noted such in her report. Similarly, Ms. Choulat testified that if she saw any "gross matter" on the victim's clothing, she would have encouraged the victim to allow SARC to keep the clothing for further examination."

Ms. Choulat stated police officers from the Jacksonville Sheriff's Office ("JSO") or members of law enforcement did not direct her to collect certain items of evidence from the victim. Ms. Choulat explained that SARC does not force a victim to give up his or her clothing if the victim does not want to provide the clothing. She further testified that, here, the victim did not permit SARC or Ms. Choulat to keep her jacket and jeans. Therefore, Ms. Choulat testified, she did not collect the victim's jacket and jeans, and SARC was unable to provide these items to the appropriate law enforcement authorities. Instead, SARC sent only the victim's bathing suit and t-shirt to FDLE for testing.

Mr. Bateh similarly testified during the evidentiary hearing. He recalled the victim did not provide her pants or jacket to Ms. Choulat at SARC. Thus, Mr. Bateh explained, he did not conduct an independent investigation as to where the jacket and pants were located because the depositions and discovery indicated the items were not turned over or collected. Mr. Bateh stated he does not know how the items could have been tested if they were "not there" and not in the State's possession. Mr. Bateh also explained that since a significant amount of time had passed from when the crime occurred to the time of trial, it is likely the jacket and jeans could not be found or tested. As such, Mr. Bateh concluded, because he did not believe a <u>Brady</u> violation occurred, he did not object or move for dismissal on such grounds.

Defendant also testified as to this point. He stated during trial, he questioned Mr. Bateh about the location of the victim's jacket and jeans. Defendant asserted Mr. Bateh responded "they didn't have it."

In view of the foregoing, this Court finds counsel was not ineffective for failing to object to a <u>Brady</u> violation or file a motion to dismiss, when he did not believe a meritorious claim of a <u>Brady</u> violation existed. <u>See</u> <u>Willacy v. State</u>, 967 So. 2d 131, 140 (Fla. 2007) (citing <u>Maxwell v. Wainwright</u>, 490 So. 2d 927, 932 (Fla. 1986) (finding "counsel is not ineffective for failing to make a futile objection")); <u>Branch v. State</u>, 952 So. 2d 470, 476 (Fla. 2006) (holding counsel cannot be ineffective for failing to file motion that would have been properly denied). As such, Ground Two is denied.

Resp. Ex. C2 at 282-86 (record citations omitted). The First DCA affirmed the denial of this claim without a written opinion. Resp. Exs. C8; C9.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Ruise is not entitled to relief on the basis of this claim.

Even if the state appellate court's adjudication of the claim is not entitled to deference, the claim in Ground Two is meritless. The United States Supreme Court decision in Brady governs a state's withholding of exculpatory evidence. To establish a Brady claim, a petitioner must demonstrate: "(1) that the prosecution suppressed evidence (2) that was favorable to the [petitioner] or exculpatory and (3) that the evidence was material." United States v. Blasco, 702 F.2d 1315, 1327 (11th Cir. 1983) (citation omitted). Notably, the holding in Brady applies only to information in the possession of the prosecutor or anyone under his authority that defense counsel could not have obtained by exercising reasonable diligence. United States v. Naranjo, 634 F.3d 1198, 1212 (11th Cir. 2011); see also United States v. Griggs, 713 F.2d 672, 674 (11th Cir. 1983) ("Where defendants, prior to trial, had within their knowledge the information by which they could have ascertained the alleged Brady material, there is no suppression by the government."). Furthermore, "a Brady claim fails when it is only speculative that the

materials at issue would have led to exculpatory information." Wright v. Sec'y Fla. Dep't of Corr. 761 F.3d 1256, 1281 (11th Cir. 2014).

Initially, the Court finds that Ruise's Brady claim fails because he speculates that the jean and jacket would lead to exculpatory information. Ruise assumes the jacket and jeans would have been in such a state as to contradict the victim's story, but because it was not taken into custody there is no way to know what evidence may or may not have been present on those articles of clothing. Therefore, his claim that this evidence was exculpatory is speculative and cannot form the basis of a Brady violation. See id. Additionally, counsel elicited testimony through the cross-examination of Lila Choulat, the examining nurse at SARC, that the bathing suit and t-shirt the victim turned over were not torn and she did not see stains nor significant foreign material. Resp. Ex. B 4 at 140-41. Thus, the jury heard and reviewed evidence of much the same matter that Ruise now posits would have helped him gain acquittal. The jury also heard evidence that the victim suffered no bruises, scratches, abrasions, lacerations, or signs of strangulation, and the nurse's report reflected no evidence of trauma to the victim's vagina or body. Id. at 142-145. All of which, the defense used to argue the victim's story was not credible. Resp. Ex. B6 at 427-28, 430. However, the jury did not acquit Ruise even when shown that evidence and given that argument. Therefore, the Court finds this evidence was not material and there is no reasonable probability the outcome of the trial would have been different had it been introduced.

Moreover, the record reflects that neither Choulat nor law enforcement officials actively withheld or hid the existence of the jeans and jacket. At trial, the nurse testified sometimes victims do not turn over certain articles of clothing and they cannot force

somebody to give them up. Resp. Ex. B4 at 141-42. At the evidentiary hearing on Ruise's Rule 3.850 Motion, Choulat testified that they collect as much clothing as the victim allows them to collect, but, in this case, the victim did not want give up her jacket. Resp. Ex. C4 at 18, 21-22, 27-29, 31. Accordingly, the State did not obtain this evidence because it was SARC policy not to physically seize clothing from a victim over his or her objections. The Court also notes that the victim had the same jacket with her at the deposition she took in this case and showed it to Ruise's attorney. Resp. Ex. B2 at 235-36. As such, the Court does not view this as suppression of evidence and Ruise has failed to establish the first prong of a <u>Brady</u> violation. Ruise's failure to demonstrate the presence of a <u>Brady</u> violation, renders his claim of ineffective assistance of counsel meritless. <u>See Diaz v. Sec'y for the Dep't of Corr.</u>, 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); <u>Bolender v. Singletary</u>, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Based on the foregoing, the claim in Ground Two is due to be denied.

### C. Ground Three

As Ground Three, Ruise asserts that his counsel was ineffective for opening the door to Ruise's misdemeanor DUI convictions. Petition at 13-14. According to Ruise, he testified at trial he was a two-time convicted felon, but the nature of those felonies was not introduced. <u>Id.</u> at 13. However, trial counsel "almost immediately questioned Petitioner further about his lifestyle and convictions," which resulted in an exchange where Ruise commented about DUIs and counsel followed up with questions concerning the nature of his prior convictions. <u>Id.</u> at 13-14. Ruise maintains this allowed the prosecutor to question

him in detail about his prior DUI convictions and substantially hurt his credibility in the eyes of the jury. Id.

Ruise raised this claim in his Rule 3.850 Motion. Resp. Ex. C1 at 20-23. In denying this claim, the circuit court stated, in pertinent part:

> As to the merits of Defendant's claim, Mr. Bateh testified extensively during the evidentiary hearing about how he prepared Defendant to testify if Defendant chose to do so. Mr. Bateh recalled that, before, trial, he and Defendant discussed Defendant testifying on his own behalf "[m]any times." Mr. Bateh and co-counsel met with Defendant and questioned Defendant as if he was on the stand testifying. Defendant testified during the evidentiary hearing that Mr. Bateh prepared him to testify just before his testimony the second day of trial. Defendant stated during direct examination that Mr. Bateh "told [him] what he needed to say" while he testified. During cross-examination, however, Defendant testified Mr. Bateh never discussed what he should say during his testimony, but Mr. Bateh knew what he would say.
>
> During the evidentiary hearing, Mr. Bateh discussed his conversation with Defendant about the State's ability to elicit information about Defendant's "two felony convictions for DUIs, which stemmed from two misdemeanor DUIs. The discussion was is [sic] that he would ask specifically how many and that is it." In particular, Mr. Bateh stated, "[t]he way that Mr. Ruise and I discussed it, there was never going to be any discussion of DUIs. It was just the two felony convictions." Defendant testified during the evidentiary hearing that Mr. Bateh told him to answer truthfully about having two felony DUIs, and then the questions should have ceased. Defendant stated Mr. Bateh affirmed the evidence about Defendant's misdemeanor DUIs would not be introduced. Defendant testified that, in preparing him to testify, Mr. Bateh never advised him about "opening the door" to his misdemeanor DUIs.
>
> Mr. Bateh recalled that, during Defendant's trial testimony, Defendant asked Mr. Bateh if he wanted Defendant to elaborate on his prior felony convictions, and Mr. Bateh responded, "Absolutely not. No." Indeed, the trial record shows counsel did not elicit the information at issue in

response to a question but, rather, Defendant volunteered it. The trial record shows Mr. Bateh asked Defendant if he had been convicted of two felonies in the past, and Defendant affirmed he had. Defendant then asked Mr. Bateh if Mr. Bateh would like Defendant to elaborate on his prior felony convictions, and Mr. Bateh stated, "No, that's all right." Defendant contested this occurred during trial.

In response to counsel's subsequent question during trial about Defendant's lifestyle during the time of the instant incident, Defendant stated "I drank." Counsel asked Defendant if drinking was a bad thing, and Defendant stated "It is when, you know, you get DUI's [sic] and things." Mr. Bateh explained during the evidentiary hearing that he then asked Defendant if drinking socially was a bad thing, and Defendant brought the issue up by stating "[i]f you get two DUIs, it is. Something to that effect." As to Defendant's response, Mr. Bateh specifically reasoned that, from his vantage point during trial, "[t]he door was opened when Mr. Ruise answered the way he did. The question I asked for was asking - was asking for a yes or no answer and it should have been, Is that life style a bad life style? It should have been no, as we discussed. Again, that answer opened the door." Most importantly, Defendant conceded during the evidentiary hearing that he brought up the issue of DUIs first.

As such, this Court finds the trial record shows Defendant volunteered the fact he had DUI convictions. Further, this Court finds credence in Mr. Bateh's testimony describing how he prepared Defendant to testify, and how Mr. Bateh advised Defendant to not elaborate on the nature of his prior felony convictions. As Mr. Bateh testified, and the record reflects, *Defendant himself* opened the door to the State's questions regarding Defendant's felony and misdemeanor convictions for DUI. Accordingly, this Court finds because Defendant's counsel *did not* open the door to the information at issue, counsel did not render deficient performance under Strickland. Ground Three is denied.

Resp. Ex. C2 at 287-89 (record citations omitted). The First DCA affirmed the denial of this claim without a written opinion. Resp. Exs. C8; C9.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Ruise is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, the claim in Ground Three is without merit. The record reflects that during Ruise's direct examination at trial, his counsel asked him if he had been convicted of two felonies, to which Ruise responded in the affirmative. Resp. Ex. B5 at 332. On his own initiative, Ruise asked, "[d]id you want me to elaborate?", with his counsel stating, "[n]o, that's all right" and switching topics. Id. Several questions later, counsel asked Ruise about his lifestyle at the time of the incident. Id. at 334. Ruise testified he consumed alcohol. Id. When counsel asked, "Okay. That's not a bad thing; is it?" Ruise replied, "It is when, you know, you get DUI's and things." Id. At this point, counsel then asked Ruise if he had gotten DUIs and if those were the two felony convictions they had previously mentioned. Id. at 334-35. After Ruise responded affirmatively, counsel moved on from the subject. Id. at 335. On cross-examination, the prosecutor inquired about Ruise's prior two DUI convictions by pointing out that his two DUI felony convictions were based on two other misdemeanor DUI convictions. Id. at 350-51. A point counsel clarified on redirect. Id. at 374. At the evidentiary hearing, Michael Bateh, Ruise's attorney, testified that prior to trial he advised Ruise that he would only ask about the existence of prior felony convictions, not the type, and warned Ruise about not mentioning his DUIs. Resp. Ex. C4

at 75-76. Notably, Ruise testified at the hearing that Bateh told him the State could not bring up the nature of his prior felony convictions if he answered truthfully. Id. at 103-04.

Based on this record, the Court finds Ruise opened the door by implying he had previous DUI convictions after his counsel told him not to elaborate. As such, it was not counsel's deficiencies that opened the door, but Ruise's own answer to an otherwise innocuous question counsel asked. Counsel's further inquiry into the matter represented damage control. Accordingly, Ruise has failed to demonstrate deficient performance.

Moreover, the Court finds Ruise has not shown a reasonable probability the outcome of the trial would have been different had Ruise not brought up his DUI convictions. At trial, the victim detailed a sexual battery, Resp. Ex. B4 at 49-59, with Ruise's semen found inside the victim's vagina. Id. at 119-22, 137, 150, 168-71, 193-96. Most damning of all, however, was Ruise's constantly changing story. As mentioned above in the analysis of Ground One, Ruise gave three varying stories of what occurred, from full denial to consensual sex. Ruise's differing explanations of what occurred severely hurt his credibility and his defense. So much so that the Court finds Ruise would have still been convicted had the jury not heard of his prior misdemeanor DUI convictions. In light of the above analysis, Ruise is not entitled to the relief he seeks in Ground Three.

**F. Ground Four**

Ruise argues that his counsel was ineffective for failing to object and move for a mistrial after the State introduced evidence of collateral crimes, specifically evidence of Ruise's suspended license at the time of the incident. Petition at 16-17. At trial, Ruise testified that he drove home from work the day of the incident and stopped on the side of the road and picked up the victim, who he claimed was a prostitute. Id. In rebuttal, the

State introduced the testimony of Detective David Humphrey who testified that Ruise's driver's license was suspended on the date of the incident. Id. According to Ruise, the State failed to disclose Humphrey as a witness and never asked Ruise during cross-examination if his license was suspended. Id. As such, Ruise now contends that counsel should have objected based on the failure to disclose, improper impeachment, and improper admission of collateral crimes evidence. Id.

Ruise raised this claim in his Rule 3.850 Motion. Resp. Ex. C1 at 23-26. In denying this claim, the circuit court explained:

> As to the merits of Defendant's claim, the record shows the State called Detective Humphrey as a witness. The Detective testified that, on either January 20, 2006, or January 21, 2006, Defendant's driver's license was suspended.

> The record shows *Defendant* opened the door to the introduction of this collateral evidence. Defendant testified he was driving home from work when he met the victim. During trial, the State questioned Defendant about a letter he wrote to the trial judge and how he indicated he was driving home from a night of partying when he met the victim. Mr. Bateh similarly recalled that, prior to trial, Defendant had written the trial judge a letter in which Defendant stated on the night in question, he was driving home from partying. Defendant also recalled his letter to the trial judge.

> During the evidentiary hearing, Mr. Bateh opined that, had Defendant not testified on his own behalf during trial, his *pro se* letter would not have been admissible. Most importantly, Mr. Bateh explained, he would not have objected to Detective Humphrey's testimony if it involved only an impeachment issue, because such an issue is not objectionable.

> This Court finds Defendant's own contradictory stories about driving on the night of the incident, coupled with the fact that Defendant had a suspended driver's license at that time, opened the door to proper impeachment by the State. The State properly impeached Defendant's credibility with evidence from Detective Humphrey showing Defendant

> should not have been driving on the night in question due to
> his suspended license. Further, this Court finds Mr. Bateh's
> explanation for not objecting constituted sound judgment by a
> seasoned defense attorney. As such, this Court finds the
> State's impeachment was not so egregious to have warranted
> a non-meritorious objection or a motion for mistrial.

Resp. Ex. C2 at 290-91 (record citations omitted). The First DCA affirmed the denial of

this claim without a written opinion. Resp. Exs. C8; C9.

To the extent that the First DCA decided the claim on the merits, the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Ruise is not entitled to relief

on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not

entitled to deference, the claim here is meritless. In Florida, a party may impeach a

witness with "[p]roof by other witnesses that material facts are not as testified to by the

witness being impeached." § 90.608, Fla. Stat. At the trial here, Ruise testified that he

was driving home from work the night of the incident and that he invited the victim, who

he claimed was a prostitute, into his car and drove them to his apartment. Resp. Ex. B5

at 338-40. The victim, however, testified that she was walking and the man who raped

her was walking behind her for some time prior to attacking her. Resp. Ex. B4 at 46-59.

Accordingly, the State properly introduced evidence that Ruise's license had been

suspended to rebut his testimony that he was driving that night. As such, there would

have been no basis for counsel to object. See §§ 90.608 Fla. Stat. Accordingly, Ruise's claim of deficiency fails. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Moreover, the Court finds Ruise cannot demonstrate prejudice, because the introduction of Ruise's various statements that contradicted his trial testimony had already significantly impugned his credibility. Therefore, even without this rebuttal evidence, there is no reasonable probability the outcome of the trial would have been different. Ruise has failed to demonstrate deficient performance or prejudice, thus his claim in Ground Four is due to be denied.

### E. Ground Five

Ruise maintains that his trial counsel was ineffective for failing to object to improper prosecutorial comments during closing arguments that misstated the evidence and improperly bolstered the State's case. Petition at 18-20. According to Ruise, the State made several comments that were attempts to convince the jury to believe the victim's account of the rape over Ruise's story, which he asserts "improperly bolstered the victim's credibility." Id. at 19-20. Additionally, Ruise contends that the prosecutor misstated evidence when she implored the jury to closely observe the bathing suit to see what she contended was plant matter, grass, and dirt. Id. at 20. Ruise asserts that the evidence presented at trial was "a swearing match between the parties" such that the prosecutor's comments unfairly and improperly bolstered the credibility of the victim, resulting in his conviction.

As Ground Five of his Rule 3.850 Motion, Ruise raised essentially the same claim. Resp. Ex. C1 at 26-31. The circuit court denied this claim, writing in part:

> In the instant case, this Court finds the prosecutorial arguments at issue, taken as a whole and placed in context,

were not improper, such to warrant objections from counsel. Indeed, the prosecutor merely commented on the evidence presented through witnesses' testimony, and drew logical inferences from said evidence. Placed in context, this Court finds the arguments at issue were not egregious to warrant objections from counsel, because the comments argued the evidence to the jury. The arguments summarized the evidence presented during trial, and offered a conclusion based on the evidence. As such, because Defendant has failed to demonstrate the comments were egregious, such to warrant objections from counsel, counsel was not ineffective for failing to object to them. As such, Ground Five is denied.

Resp. Ex. C2 at (record and case citations omitted). The First DCA affirmed the denial of this claim without a written opinion. Resp. Exs. C8; C9.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Ruise is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Five is without merit. During closing arguments "a prosecutor may 'assist the jury in analyzing, evaluating, and applying the evidence' and, therefore, may 'urge[ ] the jury to draw inferences and conclusions from the evidence produced at trial." United States v. Adams, 339 F. App'x 883, 886 (11th Cir. 2008) (quoting United States v. Johns, 734 F.2d 657, 663 (11th Cir.1984)). However, "[a] material misstatement of fact in a closing argument is improper." Ruiz v. Sec'y Fla. Dep't of Corr.,

439 F. App'x 831, 834 (11th Cir. 2011) (citing Davis v. Zant, 36 F.3d 1538, 1548 n.15 (11th Cir. 1994)) (emphasis added). Furthermore,

> A prosecutor commits improper vouching by "arguing credibility based ... on evidence not before the jury," United States v. Eyster, 948 F.2d 1196, 1207 (11th Cir. 1991) (quotation omitted), or by placing "the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity," United States v. Epps, 613 F.3d 1093, 1100 (11th Cir. 2010) (quotation omitted).

United States v. Gonzalez, 834 F.3d 1206, 1226 (11th Cir. 2016).

Concerning alleged bolstering, having reviewed the comments listed as allegedly improper in Ruise's Petition, the Court finds the prosecutor did not improperly bolster the victim's testimony. Instead, the prosecutor made arguments in support of the victim's credibility based on her testimony and demeanor at trial in light of the other evidence presented. Resp. Ex. B6 at 404, 406-07, 412, 445. None of these arguments are based on evidence not presented to the jury and the State never made any explicit personal assurances of the victim's veracity; therefore, the prosecutor did not improperly bolster the victim's testimony. See Gonzalez, 834 F.3d at 1226.

Regarding Ruise's allegation the prosecutor argued facts not in evidence, the Court disagrees. The record reflects that Choulat testified she instructed the victim to undress over two pieces of paper, which collected any foreign materials. Resp. Ex. B4 at 140, 152. After examining the victim's clothes, Choulat rolled the clothes up tightly in the paper, included it in the rape kit, and secured it until the Florida Department of Law Enforcement retrieved it. Id. 126-29, 140, 152-53. The State introduced the rape kit along with the paper and clothes into evidence. Id. Referring to her report, Choulat testified that the clothing was not torn, she did not see stains, and she "didn't see significant foreign material." Id. at 140-41. Notably, Choulat stated that her report reflected that the victim

had soil underneath her fingertips, consistent with the victim's account that she was raped

on a grass or dirt area. <u>Id.</u> at 118.

During closing arguments, the prosecutor stated the following:

> And one of the things you might also want to remember, ladies and gentlemen, is that Ms. Choulat told you that when they undress, they undress on that paper and then the clothes are wrapped up in that paper so that everything that was on them is all contained, it's all in there.

> Well, I submit you need to look at this bathing suit, because that looks like plant matter to me. That looks like grass and dirt to me. It looks like little pieces of grass, because ladies and gentlemen, in the early morning hours of January 21st of 2006, this defendant found his opportunity in [the victim] and forced her to have sex against her will and threatened her with violence and with a knife if she resisted him, and we ask that you find the only reasonable verdict in this case, and that is guilty.

Resp. Ex. B6 at 446. It is apparent from these comments that the prosecutor was making

an inference from evidence introduced at trial. The prosecutor's contention was that the

swimsuit had grass stains and she implored the jury to look for themselves. These

comments are not contrary to the evidence and, in fact, rely entirely on the prosecutor's

personal observations of a physical piece of evidence that the jury could likewise examine

during deliberations. Choulat's testimony that she did not observe "<u>significant</u> foreign

material" does not forestall the possibility of the existence of a small or slight amount of

foreign material present on the swimsuit from which the prosecutor could make this

argument. As such, the Court finds the prosecutor did not comment on evidence not

presented to the jury.

Having concluded none of these comments were improper, the Court finds any

objection to these comments would have been meritless. An attorney cannot be deemed

deficient for failing to raise meritless objections. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Based on the above analysis, Ruise's claim in Ground Five is due to be denied.

## F. Ground Six

In Ground Six, Ruise argues that his trial counsel was ineffective for failing to object to an erroneous jury instruction for the crime of sexual battery upon a person twelve years of age or older. Petition at 22-24. According to Ruise, to convict him of this offense, the State was required to prove the following four elements: (1) the victim was twelve years of age or older; (2) Ruise's sexual organ penetrated or had union with the victim's vagina; (3) Ruise coerced the victim to submit by threatening to use force or violence likely to cause serious personal injury and the victim reasonably believed Ruise had the present ability to execute the threat; and (4) the victim did not consent. Id. at 22. However, at trial, the circuit court instructed the jury that the State had to prove three elements, excluding the third element listed above. Id. The circuit court ultimately instructed the jury on this third element by stating, "if you find the defendant guilty of sexual battery, you must make a further finding," which was the third element. Id. at 23. Although advised of this element, Ruise contends that the instruction given was a misstatement of the law and confused the jury, because it led the jury to believe that they only had to find three elements to find Ruise guilty. Id. Ruise asserts that he was not charged with basic sexual battery; therefore, this instruction was erroneous, and counsel should have objected. Id.

Ruise raised a similar claim in his Rule 3.850 Motion. Resp. Ex. C1 at 31-37. Following an evidentiary hearing, the circuit court denied this claim, the circuit court explained:

Here, upon review of the elements of the standard Sexual Battery jury instruction, compared with the instruction and verdict form the jurors received, this Court finds the jurors received the same four elements the State was required to prove, written and fashioned in a different order.

Further, during the evidentiary hearing, Mr. Bateh testified at length as to this ground for relief. Mr. Bateh asserted he agreed to the jury instruction given because, with the way the verdict form was fashioned, it framed a fourth element, "Sexual Battery with Force/Threat," as an aggravating circumstance to the lesser-included offense of Sexual Battery. Therefore, Mr. Bateh explained, he and his co-counsel were hopeful the jurors would find Defendant not guilty because of the manner in which the instruction read, or guilty of only Sexual Battery without the aggravating circumstance. Mr. Bateh further explained that the jury instruction, as it was fashioned, supported Defendant's defense. Mr. Bateh stated, in his opinion, the verdict form and jury instructions did not mischaracterize the elements in which the State had to prove. Mr. Bateh characterized his action in seeking the Sexual Battery jury instructions, as presented to the jury, as a strategic decision.

Defendant testified during the evidentiary hearing that Mr. Bateh gave him a copy of the jury instructions to review. Defendant asserted he informed Mr. Bateh the third element was omitted from the jury instruction, and he needed to tell the trial judge the instruction was incorrect. Defendant testified Mr. Bateh never told him the jury instruction was fashioned as part of his trial strategy, and Defendant did not agree with the instruction.

Based on the foregoing, this Court finds Mr. Bateh acted pursuant to trial strategy by agreeing to fashion the jury instruction as he did for Defendant's benefit. Specifically, with the instruction, Mr. Bateh sought to obtain a not guilty verdict or a conviction for the lesser-included offense of Sexual Battery.

Further, assuming *arguendo* Defendant could establish deficient performance, he has failed to establish prejudice, specifically that the result of his trial would have been different had counsel objected and the trial judge had provided Standard Instruction 11.3 to the jurors. In this respect, this Court finds harmless error occurred, which did

> not change the result of Defendant's trial. See Hipp v. State,
> 650 So. 2d 91, 93 (Fla. 4th DCA 1995). Specifically, through
> the way the trial judge read the instruction to the jury, the
> failure to make the further finding would have resulted in
> Defendant being found guilty of the necessarily lesser-
> included offense of Sexual Battery. As such, Ground Six is
> denied.

Resp. Ex. C2 at 294-97 (record citations omitted). The First DCA affirmed the denial of

this claim without a written opinion. Resp. Exs. C8; C9.

To the extent that the First DCA decided the claim on the merits, the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Ruise is not entitled to relief

on the basis of this claim.

Even if the First DCA's adjudication of this claim is not entitled to deference, this

claim fails. Here, the State charged Ruise with sexual battery pursuant to section

794.011(4)(b), Florida Statutes, and alleged in the body of the information that Ruise

coerced the victim "to submit by threatening to use force or violence likely to cause serious

personal injury to [the victim], who reasonably believed that [Ruise] had the present ability

to execute such threats." Resp. Ex. B1 at 13. Pursuant to section 794.011(4)(b), "[a]

person 18 years of age or older who commits sexual battery upon a person 18 years of

age or older without that person's consent, under any of the circumstances listed in

paragraph (e), commits a felony of the first degree." Among the circumstances listed in

paragraph (e) of the statute is when "[t]he offender coerces the victim to submit by threatening to use force or violence likely to cause serious personal injury on the victim, and the victim reasonably believes that the offender has the present ability to execute the threat." § 794.011(4)(e)2., Fla. Stat.

During the charge conference at Ruise's trial, counsel did not object to the jury instruction in question. Resp. Ex. B5 at 327-29, 387-90. Ultimately, the circuit court instructed the jury as follows:

<u>SEXUAL BATTERY UPON A PERSON TWELVE YEARS</u>
<u>OF AGE OR OLDER</u>

To prove the crime of Sexual Battery Upon a Person Twelve Years of Age or Older, the State must prove the following three elements beyond a reasonable doubt:

1.  [The victim] was twelve years of age or older.

2.  ANTHONY LEE RUISE committed an act upon [the victim] in which the sexual organ of ANTHONY LEE RUISE penetrated or had union with the vagina of [the victim].

3.  The act was done without the consent of [the victim].

"Consent" means intelligent, knowing, and voluntary consent and does not include coerced submission. Consent does not mean the failure by the alleged victim to offer physical resistance to the offender.

If you find the defendant guilty of Sexual Battery, you must make a further finding of whether, at the time of the offense, the defendant coerced the victim to submit by threatening to use force or violence, likely to cause serious personal injury and that the victim reasonably believed that the defendant had the ability to execute the threat.

Resp. Ex. B3 at 365.

At the evidentiary hearing on this claim, Ruise's counsel, Bateh, testified that he reviewed the jury instructions with Ruise prior to trial. Resp. Ex. C4 at 82. Bateh stated he was aware at the time of trial that the State was required to prove four elements. Id. at 84. He was also aware that this jury instruction was not written in the same manner as the standard jury instruction. Id. at 100. However, Bateh testified he did not object because, from a strategic point of view, he felt the way the instruction was written helped their defense theory that the sex was consensual or, at worse, no force was involved. According to Bateh, he was "trying to mitigate anything that the jury would look at," id. at 83, such that they hoped to keep this specific element as an aggravator to allow the jury to find Ruise guilty of simple sexual battery, a necessary lesser-included offense. Id. at 83-84, 99-100. The circuit court determined Bateh's testimony was credible and that he made a reasonable strategic decision. Resp. Ex. C2 at 294-97. Ruise has failed to present clear and convincing evidence rebutting the circuit court's factual findings on this issue; therefore, the Court presumes these factual findings are correct. See 28 U.S.C. § 2254(e)(1). The Court further finds that counsel's strategy was reasonable given Ruise's testimony that the sex was consensual and the fact that although the instruction was worded differently it ultimately included each of the four elements of the charged offense. This latter point further demonstrates that no prejudice occurred even if counsel was deficient, because the jury was still tasked with determining each element of sexual battery through physical coercion. Accordingly, Ruise has failed to demonstrate deficient performance or prejudice; therefore, the relief he seeks in Ground Six is due to be denied.

## G. Ground Seven

Ruise contends that his trial counsel was ineffective for failing to investigate and call the victim's best friend, Kia Stewart, as a witness at trial. Petition at 25. According to Ruise, he requested his counsel call Stewart as a witness to refute the victim's testimony that Stewart was present with her at a restaurant prior to the sexual battery occurring. Id. Ruise maintains that Stewart would have testified she did not go to the restaurant that night. Id. Ruise asserts that Stewart's testimony would have provided further impeachment evidence against the victim. Id.

Ruise raised this claim in his Rule 3.850 Motion. Resp. Ex. C1 at 37-39. In denying this claim, the circuit court explained:

> This Court finds the record refutes Defendant's instant claim. Specifically, he testified under oath that, other than possibly himself, he understood counsel would not be calling any other individuals as Defense witnesses during trial. Defendant further testified he and counsel spoke about locating, interviewing, listing, or calling other witnesses than himself, and counsel explained to Defendant's satisfaction why the witnesses would not be called. Indeed, Defendant affirmed to the trial judge that, after speaking with counsel, there were no other witnesses he believed should be called during the Defense case.

> Further, after the close of the Defense case-in-chief, the trial judge asked Defendant if he wanted his attorneys to introduce any further evidence, and Defendant stated he did not. Finally, while the jurors deliberated, the trial judge asked Defendant if he was pleased with the way his attorneys tried the case, and Defendant affirmed he was satisfied with counsels' representation of him. During the evidentiary hearing, Defendant affirmed he had offered sworn testimony during trial in which he specifically indicated to the trial judge he was satisfied with counsels' representation of him.

> This Court finds Defendant may not seek to go behind his previous sworn testimony, and now allege counsel was ineffective for failing to call an additional witness during trial.

> Finally, Defendant's assertion that he suffered prejudice fails
> because, as discussed *supra* in Ground One, trial counsel
> exhaustively attacked the victim's credibility. As such, Ground
> Seven is denied.

Resp. Ex. C2 at 298 (record citations omitted). The First DCA affirmed the denial of this claim without a written opinion. Resp. Exs. C8; C9.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Ruise is not entitled to relief on the basis of this claim.

Nonetheless, even if the First DCA's adjudication of this claim is not entitled to deference, the claim here is meritless. The United States Supreme Court has noted that "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) (holding a court may deny postconviction relief on claims that are refuted by sworn representations the defendant made to the trial court). During a colloquy with the circuit court, Ruise stated, under oath, that there were no other witnesses or evidence that he wanted his counsel to present. Resp. Ex. B5 at 387-88. As such, Ruise is now estopped from arguing his counsel was ineffective for failing to call a witness. See Blackledge, 431 U.S. at 74; Kelley, 109 So. 3d at 812-13. Moreover, given how much counsel had already impeached the victim at trial, Resp. Ex. B4 at 69-92, the Court finds

there is no reasonable probability the outcome of the trial would have been different had counsel been able to impeach the victim with this single piece of evidence. As noted above, Ruise's own credibility was severely impugned due to his own varying and contradicting explanations for what occurred that night, so much so that the trial would not have had a different outcome had Stewart testified. For the above stated reasons, the claim in Ground Seven is due to be denied.

## H. Ground Eight

Finally, in his last ground, Ruise asserts that the cumulative effect of his trial counsel's deficient performance prejudiced him. Petition at 27. The Court notes that where all individual claims of ineffective assistance of counsel are meritless, the claim of cumulative error is also without merit. Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Here, the Court has found each of the preceding seven grounds for relief to be meritless; therefore, Ruise's claim of cumulative error is due to be denied. See id.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Ruise seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Ruise "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v.

Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Ruise appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of October, 2019.


MARCIA MORALES HOWARD
United States District Judge


Jax-8

C:     counsel of record
       Anthony Ruise